## MATTHEW MURPHEY *vs.* WILLIAM B. SLOAN.

The agreement between the parties created the relation of principal and agent.

It is a well settled principle, that the agent cannot make any profit or advantage in the business of his principal, or do any other act which would tend to his own advantage, and to the loss of his principal.

Where a party has been employed to sell property as the agent of another, he cannot become the purchaser of it in his own name.

This doctrine is not only applied to persons confidentially intrusted with the management of the property of others, but in other cases involving the rights and interests of employers.

An agent, employed to collect an execution, cannot be permitted to deal on his own account, with those from whom he is to collect the money, adversely to the interest of his employer.

The decree of the court in this case should have provided for the re-sale of the property, unless the defendant (S.) should pay to M. one half the amount of his judgment, with interest.

IN error from the circuit court of Warren county; Hon. Geo. W. L. Smith, judge.

The opinion of the court contains a full statement of the facts of the case.

*Smedes* and *Marshall*, for plaintiff in error.

*W. B. Sloan*, in *propriâ personâ*, cited and commented on Fonb. Eq. 425; 2 Mad. Ch. 112; 5 How. 673; 1 S. & M. 112; Ib. 443.

Murphey v. Sloan.

Mr. Justice YERGER delivered the opinion of the court.

In this case, the complainant obtained a judgment on the 10th day of November, 1840, in the circuit court of Warren county, against Moses Flock. This remained unsatisfied until the 7th December, 1842. At that time, the defendant, an attorney at law, knowing the existence of the judgment, " saw complainant and stated to him that he knew some property, which he believed to be bound by the judgment." This statement, the defendant says, was made to Murphey, " by way of inducement, and that in consideration of such knowledge, which Murphey believed the defendant possessed, an agreement was made, that execution might issue and be levied upon the property to be pointed out by the defendant, and that the net proceeds of the sale of the property should be divided between complainant and defendant." The agreement so made was reduced to writing in the following words : " Rec'd of Matthew Murphey, a judgment against Moses Flock for $241.17 damages, $18.75 costs ; I am to pay said Murphey one half of the cash actually collected from said judgment, and to pay all costs that may hereafter accrue thereon; and if it may be necessary for me to bid on property sold, I am not to pay one half of what the property sells for until in actual possession of the same. V. Burg, Dec'r 7th, 1842. (Signed,) Wm. B. Sloan."

The defendant states in his answer, that in accordance with the above agreement, he had an execution sued out and levied upon a certain lot in Vicksburg, as the property of Flock, which was advertised by the sheriff for sale; but that before the day of sale, he ascertained that Flock had no title to the property, having sold it, twelve months before the date of complainant's judgment, to a man named Hosbrook, who went into possession of the same, and was in possession thereof when the judgment was rendered. The defendant in his answer also states, that having ascertained that Flock had no interest in the lot so levied on, but that the title thereof was in Hosbrook, he (the defendant) bought the same of Hosbrook, giving him therefor the sum of one hundred and fifty dollars. He states, however, that afterwards the sheriff also sold the lot by virtue of the execution in favor of complainant, and defendant then bought it at the

sheriff's sale for twenty-five dollars, but that his object in making this latter purchase was "rather to free the records of said property, than to acquire a title under the sheriff's sale, being already satisfied with that derived from Hosbrook." The defendant offers in his answer and avers, that he has always been willing to pay complainant the sum of $12.50, being the one half of his bid at the sheriff's sale and contends that he is not liable on his contract to pay any more, and that complainant has no right or interest in the lot purchased by him. He insists that he has put valuable improvements on the property since his purchase. The court below declared Sloan "a trustee for the use of Murphey of an undivided half of the lot purchased by him, with direction to convey the same to Murphey, from which decree an appeal was taken."

The agreement entered into by Murphey and Sloan, by which the latter undertook to have the execution against Flock issued and levied upon the property of Flock to be pointed out by him, and upon the sale of it to pay over one half of the proceeds to Murphey, retaining the other half as compensation for his information and trouble in the premises, created the obligation and responsibility of a principal and agent between the parties. While this relationship existed between them, the well settled rule of law is, that the agent could not make any profit or advantage in the business, or do any act therein whatever, that would tend to his own advantage, and to the loss or injury of the principal. Story on Agency, § 210, 211 to § 217. Thus it has been held, that where a party has been employed to sell property as the agent of another, he cannot become the purchaser of it in his own name, because his duty to his principal, and his own interest, would stand in direct opposition to each other. This doctrine is not only applied to cases of persons confidentially intrusted with the management of the property of others, but in cases of other relations of a confidential nature, involving the rights and interests of the employers. Story on Agency, p. 200, 201. Various illustrations of the general rule have been given, as that an agent employed to sell, cannot become the purchaser. An agent employed to buy cannot be the seller. So an executor or administrator cannot buy any of

the debts of the deceased, for his own account and benefit. So an agent employed to settle a debt cannot purchase it on his own account, for he is bound to purchase it upon the best terms which he can for the benefit of his principal. It has also been held, that if an agent has received goods from his principal, and has agreed to hold them subject to his order, or to sell them for him, and to account for the proceeds, he will not be allowed to set up the adverse title of a third person to the same goods to defeat his obligations. Story on Agency, 207.

We think the case before us falls clearly within the spirit and intent of the general rule. In this case, the defendant undertook to collect the judgment of complainant, by the sale of certain property alleged by him to be the property of the judgment debtor. While this agreement subsisted between the parties, and after a levy upon the property by virtue of complainant's execution, the defendant, the agent, became the purchaser of the outstanding claim of a third party to the property; and having thus acquired what he says he was satisfied was a good title, he still sold under complainant's execution, and became the purchaser of the property for almost a nominal sum, thereby removing all incumbrances from the property, and perfecting the title in himself. Surely a court of equity will not permit him to reap the whole profit of this transaction, which he was most probably enabled to make by the vantage ground he possessed in controlling the execution of complainant. It may be, that the defendant so acting may have acted in entire good faith towards the interest of complainant. It may be, that the judgment of complainant did not bind the property, that the sale from Flock to Hosbrook vested the title in him; yet sound policy requires, that an agent employed to collect an execution should not be permitted to deal on his own account with those holding claims and rights to the property, adverse to the interests of the person employing him. In such cases, the duty of the agent to his principal, and his own interest, would stand in direct opposition to each other. This state of things would hold out temptations and seductions which, in many cases, the party might not be able to resist; and hence it is, that our law, not regarding the fairness of any particular case, has interposed a

56 *

positive prohibition to such conduct on the part of the agent. Story on Agency, 200.

We think, in this case, that it was contemplated by the parties that the defendant might become the purchaser of the property, accounting to the complainant for one half of the value of it; but we do not believe it was intended, by either of them, that the complainant should have any interest in the property itself, further than the receipt in money of one half of its value; and in this view of the case, the decree of the court below, declaring the defendant a trustee for complainant of one half of the property, was erroneous. The decree should have provided for a resale of the property, unless the defendant would have paid to the complainant one half of the amount of his judgment, and interest thereon.

We, therefore, reverse the decree, and remand the cause, with directions, that decree shall be made directing an account between the parties, showing the amount of the principal, interest, and costs of the judgment of complainant against Flock; also showing the amount of money, with interest thereon, paid by defendant to Hosbrook, for his title to the property; also showing the actual amount of money and interest expended in permanent and lasting improvements of the property by the defendant, and also the value of the annual rents of the property since the same came into possession of the defendant. And upon the coming in and confirmation of the report of the commissioner taking said account, then, unless the defendant shall immediately pay to complainant one half of the amount of the original judgment, interest, and costs of complainant against Flock, a decree shall be made, directing a sale of said property for cash; and that out of the proceeds shall be paid to the defendant any sum that may remain due to him, after charging him with the annual rents of the property, on account of money paid to Hosbrook in purchasing his title, and expended in permanent and lasting improvements on the property; and that out of the balance of the proceeds of said sale shall be paid to complainant, in the first instance, one half of the judgment, interest, and costs in his favor against Flock; and if any surplus shall then remain, it shall be paid over to defendant. The costs of

the proceedings in this suit between the parties in the circuit court shall be decreed to be paid by the defendant below. But the complainant shall pay the costs of the appeal in this court.